**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEYBANK NATIONAL ASSOCIATION, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | NO. _____ |
| FLEETWAY LEASING COMPANY and FMC3, LLC, | : | |
| | : | |
| Defendants. | : | |

## VERIFIED COMPLAINT

Plaintiff KeyBank National Association ("KeyBank") hereby brings this action against Defendants Fleetway Leasing Company ("Fleetway") and FMC3, LLC ("FMC3" and together with Fleetway, the "Defendants") and seeks recovery of its due and owing secured debt in excess of $10,700,000. KeyBank also seeks the immediate appointment of a receiver and other relief in connection with the Defendants' intentional fraudulent misrepresentation of material financial information to wrongly induce KeyBank to continue to extend credit to the Defendants under a false understanding of the Defendants' financial condition.

## THE PARTIES

1.     KeyBank National Association is a national banking association.  As set forth in its charter, KeyBank is located in Cleveland, Ohio.

2.     Fleetway Leasing Company is a Pennsylvania corporation.  Fleetway is registered to do business in Pennsylvania.  Fleetway has a principal place of business located at 336 W. Street Road, Feasterville, Bucks County, Pennsylvania 19053.  Fleetway is owned and controlled by William S. Stamps and Eric D. Stamps, who are, and during relevant times were, directors

and officers of Fleetway.  Fleetway is in the business of buying, selling, and leasing automobiles.

3.    FMC3, LLC is a Pennsylvania limited liability company.  FMC3 has a principal place of business located at 336 W. Street Road, Feasterville, Bucks County, Pennsylvania 19053.  FMC3 is owned and controlled by William S. Stamps and Eric D. Stamps, who are, and during relevant times were, the members and managers of FMC3.  William S. Stamps is an adult individual residing at 550 Southeast 5th Ave., S#305 Boca Raton, Florida 33432.  Eric D. Stamps is an adult individual residing at 747 Woodleave Road, Bryn Mawr, Pennsylvania 19010.  FMC3 is in the business of buying, selling, and leasing automobiles.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction through 28 U.S.C. § 1332(a) because there is complete diversity between KeyBank and the Defendants and because there is more than $75,000 in controversy.

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Defendants reside in this District and a substantial part of the events giving rise to the claims asserted occurred in this District.

## THE DEFENDANTS' BUSINESS

6.    The Defendants are in the business of acquiring automobiles and then selling or leasing their inventory of vehicles.

7.    A material portion of the Defendants' business involves leasing fleets of vehicles to car rental agencies under leasing arrangements, whereby general lease terms are set forth in a master agreement and individualized lease terms per vehicle are set forth on schedules thereto. Under these leasing arrangements, an individual vehicle may be leased to a car rental agency for up to four years or more.

2

8.      The car rental agencies then rent the leased vehicles to their customers under daily and other rental agreements.

9.      The leased vehicles continue to depreciate in value as they are rented by the car rental agencies.  Specifically, as a leased vehicle ages and additional miles are driven, the value of the leased vehicle declines.

10.     The lease payments due from the car rental agencies to the Defendants are intended to compensate the Defendants for the monthly depreciation in the value of the leased vehicles as a result of their continued use.

11.     The Defendants use such lease payments to, among other things, pay the debt service owed to KeyBank on secured loans made by KeyBank to the Defendants in reliance on the value of such leased vehicles.

12.     The risk of non-payment by the car rental agencies with respect to their leases with the Defendants is a material credit issue for KeyBank because, when lease payments are not made, the value of the leased vehicles may continue to decline with no corresponding reduction of the debt secured by such vehicles, which can result in such loans becoming undersecured.

13.     As explained below, since at least June 2017, the Defendants have intentionally misrepresented to KeyBank that certain car rental agencies were current on their lease payments when, in fact, their accounts were delinquent.  The Defendants fraudulently concealed this material financial information in order to induce KeyBank to continue to extend credit to the Defendants based on a false understanding of the Defendants' financial condition, where the significant increased risk of non-payment to KeyBank was hidden.

3

## THE DEFENDANTS' AGREEMENTS WITH KEYBANK

14.     The Defendants and KeyBank executed that certain Lease Line of Credit and Security Agreement dated as of July 7, 2015 (the "Lease Line of Credit Agreement").

15.     A true and correct copy of the Lease Line of Credit Agreement, together with the commitment letter, dated June 30, 2015, incorporated into the Lease Line of Credit Agreement by reference (the "Commitment Letter"), is attached hereto as Exhibit A and incorporated herein by reference.

16.     Under the Lease Line of Credit Agreement, KeyBank made a discretionary revolving line of credit in the maximum principal amount of $13,000,000 available to the Defendants for the purpose of funding their leasing operations and, in particular, their leasing arrangements with the rental car agencies (the "Lease Line of Credit").

17.     To secure the Lease Line of Credit, the Defendants granted to KeyBank a continuing security interest in all accounts, chattel paper, documents, intangibles, inventory, equipment, fixtures, motor vehicles, and other personal property of the Defendants and the proceeds thereof, pursuant to Section 7 of the Lease Line of Credit Agreement.

18.     To obtain an advance under the Lease Line of Credit, the Defendants would submit an advance request to KeyBank containing, among other things, (a) evidence of the acquisition cost of the vehicle to be financed; (b) a certificate of title or other proof of ownership of such vehicle with KeyBank's lien noted thereon; and (c) a copy of a lease of such vehicle to a rental car agency or other lessee.

19.     At its option and in its sole discretion, KeyBank would then make (or not make) the advance in the requested amount equal to the acquisition cost of the leased vehicle.

20.     In connection with each such advance, the obligation to repay such advance, and

4

KeyBank's lien on and security interest in the leased vehicle, would be confirmed and further evidenced by a Note and Security Agreement Auto & Equipment Leasing and Rental Financing (each, a "Lease Note" and collectively, the "Lease Notes") executed by the Defendants in favor of KeyBank.

21.    Under the Lease Line of Credit Agreement, KeyBank is presently financing over 700 vehicles which the Defendants have leased in fleets to over two dozen car rental agencies as well as to numerous other lessees.

22.    KeyBank is presently owed outstanding principal under the Lease Line of Credit in an amount equal to $10,345,461.85 (in addition to accrued and unpaid interest, fees, and expenses and all other amounts owed to, chargeable by, or otherwise recoverable by KeyBank under the Lease Line of Credit Agreement, the Lease Notes, and related agreements, instruments, and documents (collectively, the "Lease Line Documents")).

23.    The Defendants and KeyBank also executed that certain Floorplan Line of Credit and Security Agreement dated as of July 7, 2015 (the "Loan Agreement").

24.    A true and correct copy of the Loan Agreement is attached hereto as Exhibit B and incorporated herein by reference.

25.    Under the Loan Agreement, KeyBank made a discretionary revolving line of credit in the maximum principal amount of $1,000,000 available to the Defendants for the purpose of funding their purchase of vehicles to be held by them as inventory available for sale or lease (the "Floorplan Line of Credit").

26.    To secure the Floorplan Line of Credit, the Defendants granted to KeyBank a continuing security interest in all accounts, chattel paper, documents, intangibles, inventory, equipment, fixtures, motor vehicles, and other personal property of the Defendants and the

5

proceeds thereof, pursuant to Section 3 of the Loan Agreement.

27.     Advances made by KeyBank, at its option and in its sole discretion, under the Floorplan Line of Credit, and the obligation to repay the same, are further evidenced by that certain Floorplan Line-of-Credit Demand Promissory Note, dated July 7, 2015, executed by the Defendants in favor of KeyBank in the original maximum principal amount of $1,000,000 (the "Floorplan Note").  A true and correct copy of the Floorplan Note is attached hereto as Exhibit C and incorporated herein by reference.

28.     Under the Loan Agreement, KeyBank is presently financing over 20 vehicles held by the Defendants as inventory for sale or lease.

29.     KeyBank is presently owed outstanding principal under the Floorplan Line of Credit in an amount equal to $252,600.00 (in addition to accrued and unpaid interest, fees, and expenses and all other amounts owed to, chargeable by, or otherwise recoverable by KeyBank under the Loan Agreement, the Floorplan Note, and related agreements, instruments, and documents (collectively, the "Floorplan Documents")).

30.     Fleetway also executed that certain Promissory Note, dated as of April 1, 2013, in favor of KeyBank in the original principal amount of $500,000 (the "Term Note").

31.     A true and correct copy of the Term Note is attached hereto as Exhibit D and incorporated herein by reference.

32.     Under the Term Note, KeyBank made a term loan to Fleetway in the original principal amount of $500,000 for the purpose of funding Fleetway's business operations (the "Term Loan").

33.     To secure the Term Loan, Fleetway executed that certain Commercial Security Agreement, dated April 1, 2013, in favor of KeyBank (the "Commercial Security Agreement").

6

34.     A true and correct copy of the Commercial Security Agreement is attached hereto as <u>Exhibit E</u> and incorporated herein by reference.

35.     Pursuant to the Commercial Security Agreement, Fleetway granted to KeyBank a continuing security interest in all accounts, chattel paper, documents, intangibles, inventory, equipment, fixtures, motor vehicles, and other personal property of Fleetway and the proceeds thereof.

36.     KeyBank is presently owed outstanding principal under the Term Loan in an amount equal to $108,315.29 (in addition to accrued and unpaid interest, fees, and expenses and all other amounts owed to, chargeable by, or otherwise recoverable by KeyBank under the Term Note, the Commercial Security Agreement, and related agreements, instruments, and documents (collectively, the "Term Loan Documents" and collectively with the Lease Line Documents and the Floorplan Documents, the "Loan Documents")).

37.     KeyBank perfected its security interests in the Defendants' personal property by, among other things, filing UCC-1 financing statements with the Secretary of the Commonwealth of Pennsylvania naming the Defendants as the debtors and KeyBank as the secured party and describing such collateral (collectively, the "Financing Statements").

38.     True and correct copies of the Financing Statements, together with all amendments thereof and continuation statements therefor, are attached hereto as <u>Exhibit F</u> and incorporated herein by reference.

<u>**EVENTS OF DEFAULT UNDER LOAN DOCUMENTS**</u>

39.     On or about April 25, 2016, William Stamps, an owner, director, and officer of Fleetway and a member and manager of FMC3, and Harry Willner, the general manager of Fleetway, both accepted board seats with the rental car agency of Best Way Auto & Truck

Rental, Inc. ("Best Way").[1]

40.     By the end of 2016, the Defendants had leased a fleet of approximately 592 vehicles to Best Way.

41.     On December 19, 2016, Best Way filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Middle District of Florida, Case No. 8:16-bk-10740-MGW, which bankruptcy case was converted to a case under Chapter 7 of the Bankruptcy Code on January 18, 2017.

42.     On account of Mr. Stamps' and Mr. Willner's seats on Best Way's board of directors and Best Way's bankruptcy filing, the Defendants learned that the fleet of approximately 592 vehicles leased by them to Best Way had been sold, substantially damaged, destroyed, lost, transferred, or otherwise disposed of by Best Way.

43.     Contemporaneously with such events, the Defendants began defaulting under certain financial covenants set forth in the Loan Documents.

44.     Pursuant to Section 7(l)(ii) of the Loan Agreement, and the Commitment Letter incorporated into the Lease Line of Credit Agreement, the Defendants were required to maintain a "Debt Service Coverage Ratio" as of the last day of each fiscal year of not less than 1.10 to 1.00.

45.     According to the Defendants' financial records, the Defendants maintained a "Debt Service Coverage Ratio" as of December 31, 2016 of 0.71 to 1.00.

46.     Pursuant to Section 7(l)(iii) of the Loan Agreement, and the Commitment Letter incorporated into the Lease Line of Credit Agreement, the Defendants were required to maintain a "Debt to Tangible Capital Funds Ratio" as of the last day of each fiscal quarter of not less than

---

1 https://www.sec.gov/Archives/edgar/data/949982/000101489716000550/exhibit991.htm

6.00 to 1.00.

47.     According to the Defendants' financial records, the Defendants maintained a "Debt to Tangible Capital Funds Ratio" as of December 31, 2016 of 6.16:1.00 and as of March 31, 2017 of 6.50:1.00.

48.     The Defendants also informed KeyBank that 18 leased vehicles subject to Lease Notes had been sold, substantially damaged, destroyed, lost, transferred, or otherwise disposed of by the lessee without any payments being made to KeyBank or the Defendants, which constituted additional defaults under the Lease Notes.

49.     By reason of such financial covenant defaults and additional defaults under the Lease Notes, events of default have occurred and are continuing under Section 10(a), (b), (c), and (e) of the Lease Line of Credit Agreement, Section 8(iii) and (v) of the Loan Agreement, and the "Other Defaults" Section of the Term Note.

50.     By letter dated July 26, 2017, KeyBank notified the Defendants of the occurrence and continuance of such events of default (the "First Notice Letter").

51.     A true and correct copy of the First Notice Letter is attached hereto as Exhibit G and incorporated herein by reference.

## DEFENDANTS FRAUDULENTLY MISREPRESENT FINANCIAL INFORMATION

52.     During the month immediately following a fiscal quarter end, the Defendants have regularly delivered to KeyBank an accounts receivable report and aging as of the end of such fiscal quarter (an "A/R Report").

53.     Each A/R Report informs KeyBank whether the rental car agencies and other lessees are current or delinquent on their payments to the Defendants under their leases of the vehicles financed by KeyBank under the Lease Line of Credit.

54.     On July 11, 2017, the Defendants delivered to KeyBank an A/R Report as of June 30, 2017 (the "June A/R Report").

55.     A true and correct copy of the June A/R Report is attached hereto as Exhibit H and incorporated herein by reference.

56.     The June A/R Report represented that the following rental car agencies and other lessees were current in their lease payments to the Defendants (collectively, the "June Lessees"): (a) Luxury Limousine Service; (b) SDA Car Rental dba Payless; (c) Total Auto Rent LLC; (d) CRC Car Rental Inc.; (e) Broad Hill Management, Inc.; (f) St. Abanoub Group, Inc.; (g) Doral Services Associate Corp.; (h) Auto Source 1 Inc.; (i) Action Car Rental LLC; (j) VIP Rent a Car Service LLC; and (k) Pavemaster Paving Inc.

57.     On October 12, 2017, the Defendants delivered to KeyBank an A/R Report as of September 30, 2017 (the "September A/R Report").

58.     A true and correct copy of the September A/R Report is attached hereto as Exhibit I and incorporated herein by reference.

59.     The September A/R Report represented that the following rental car agencies and other lessees were current in their lease payments to the Defendants (the "September Lessees"): (a) Luxury Limousine Service; (b) CRC Car Rental Inc.; (c) AS1 Rental Car LLC; (d) Broad Hill Management, Inc.; (e) Doral Services Associate Corp.; (f) Auto Source 1 Inc.; (g) Action Car Rental LLC; (h) VIP Rent a Car Service LLC; (i) Pavemaster Paving Inc.; (j) Auto Leasing Services of Southern Florida; and (k) Omni Collective LLC.

60.     At the time of each such A/R Report, the Defendants leased over 300 vehicles financed by KeyBank under the Lease Line of Credit to the June Lessees and the September Lessees, *i.e.* over 40% of all vehicles financed by KeyBank under the Lease Line of Credit.

10

61.     On December 21, 2017 and again at a meeting with the Defendants held on January 25, 2018, the Defendants admitted to KeyBank that the June A/R Report and the September A/R Report had been fraudulently altered by the Defendants to conceal delinquencies from KeyBank.

62.     Specifically, the Defendants told KeyBank that: (a) William Stamps and the Defendants' controller, Matt Hoff, were aware that the June Lessees and the September Lessees were delinquent in certain lease payments, (b) Mr. Stamps had instructed Mr. Hoff to disregard such delinquencies when preparing the A/R Reports for KeyBank, and (c) Mr. Hoff had followed such instructions and prepared knowingly false A/R Reports.

63.     At the January 25, 2018 meeting, Mr. Hoff provided KeyBank with a month by month list of lessee accounts, whose status he had fraudulently altered from "delinquent" to "current" at the instructions of Mr. Stamps (the "Hoff List").

64.     A true and correct copy of the Hoff List is attached hereto as Exhibit J and incorporated herein by reference.

65.     In a report delivered to KeyBank on January 3, 2018 (the "SCI Report"), the Defendants' financial advisor, Strategic Capital Investments LLC, confirmed that, as of December 2017, the following rental car agencies and other lessees (which include many of the June Lessees and the September Lessees) were delinquent in their lease payments to the Defendants in a total sum in excess of $1,200,000: (a) Action Car Rental LLC; (b) Auto Source 1 Inc.; (c) Auto Leasing Services of Southern Florida; (d) Broad Hill Management, Inc.; (e) CRC Car Rental Inc.; (f) Doral Services Associate Corp.; (g) Executive Car Rental; (h) Omni Collective LLC; (i) Florida Premium Rental Car; (j) Sales Rent a Car Corp; and (k) VIP Rent a Car Service LLC.

66.     A true and correct copy of the SCI Report is attached hereto as <u>Exhibit K</u> and incorporated herein by reference.

67.     On account of the Defendants' intentional fraudulent concealment of lessee delinquencies, KeyBank was unaware from July 2017 through November 2017 that lessees, who leased approximately 40% of the vehicles financed by KeyBank under the Lease Line of Credit, were actually delinquent in certain lease payments.

68.     Over that same time period from July 2017 through November 2017, KeyBank made over 150 extensions of credit to the Defendants under the Lease Line of Credit.

69.     If KeyBank had been aware of the true financial condition of the Defendants and actual risk of non-payment to KeyBank, KeyBank would not have made such extensions of credit to the Defendants, which were discretionary pursuant to the terms and conditions of the Loan Documents.

70.     In addition to admitting to preparing false financial information, the Defendants have told KeyBank, and the Defendants' independent financial advisor, Strategic Capital Investments LLC, has separately confirmed, that the Defendants: (a) are not well run; (b) project that they will be unable to repay KeyBank upwards of $4,100,000 of the secured debts owed to it; (c) project that they will be unable to repay their other lenders upwards of $8,758,000 of the debts owed to them; and (d) have been lax on collecting past due accounts of lessees pursuant to the instructions of William Stamps.

71.     In sum, while under the ownership, control, and management of William Stamps, and pursuant to his instructions, the Defendants have fraudulently concealed material financial information from KeyBank in an attempt to disguise Mr. Stamps' gross mismanagement of the companies.

## ADDITIONAL EVENTS OF DEFAULT UNDER LOAN DOCUMENTS

72.     By reason of the material misrepresentations made by the Defendants in their financial records provided to KeyBank, additional events of default have occurred and are continuing under Section 10(c), (d), and (e) of the Lease Line of Credit Agreement, Section 8(iv) and (v) of the Loan Agreement, and the "False Statements" and "Other Defaults" Sections of the Term Note.

73.     Moreover, the Defendants failed to make the regularly scheduled principal and/or interest payments due under the Lease Line of Credit on December 31, 2018 and January 31, 2018.

74.     As a result, additional events of default have occurred and are continuing under Section 10(a) of the Lease Line of Credit Agreement, Section 8(v) of the Loan Agreement, and the "Other Defaults" Sections of the Term Note.

75.     Such payment defaults resulted in the Lease Line of Credit being past due in the amount of $743,660.55.

76.     The Defendants failed to make such payments notwithstanding the fact that they continue to collect lease payments from the lessees of the over 700 vehicles presently financed by KeyBank under the Lease Line of Credit.

77.     Instead of making the payments required under the Loan Documents, the Defendants have opted to breach their agreements, deposit the proceeds of KeyBank's collateral in deposit accounts commingled with other funds, and use such funds for other purposes, including, without limitation, paying their other creditors.

78.     The collection of such lease payments, and failure to make such loan payments, have put the Lease Line of Credit at risk of being "out of trust" where the value of the leased

vehicles continues to decline with no corresponding reduction of the debt secured by such vehicles, which may result in such loan becoming undersecured.

79.     By letters dated December 28, 2017, January 16, 2018, and February 6, 2018, KeyBank reiterated the prior noticed events of default under the Loan Documents and further notified the Defendants of the occurrence and continuance of such payment and other additional events of default under the Loan Documents (collectively, the "Additional Notice Letters").

80.     True and correct copies of the Additional Notice Letters are attached hereto as Exhibit L and incorporated herein by reference.

81.     Pursuant to the Additional Notice Letter, dated February 6, 2018, KeyBank accelerated the maturity of the outstanding obligations under the Lease Line of Credit, the Floorplan Line of Credit, the Term Loan, and otherwise under the Loan Documents and demanded immediate payment of the same in full.

82.     KeyBank has not received payment in full with respect to such obligations since such Additional Notice Letter was sent.

### DEFENDANTS' OTHER CREDITORS

83.     In addition to KeyBank, the Defendants obtained financing for their business operations from several other financial institutions, including PNC Bank, N.A., Santander Bank, N.A., 1st Source Bank, and TD Bank N.A.

84.     Such financing from such other lenders is similar to the types of financing provided by KeyBank in that each lender is lending against the value of specific vehicles to be sold or leased and, when leased, is relying on the corresponding stream of lease payments and loan payments to repay the balance of the loan parallel with the depreciation in the value of the vehicle.

85.    According to the SCI Report, the total amount of debt owed to all of the Defendants' lenders, including KeyBank, is in excess of $35,000,000.

86.    According to the Defendants, they project that they are unable to repay over $12,500,000 of such amount.

87.    Upon information and belief, the Defendants have notified their other lenders of their financial distress and fraudulent misrepresentations.

88.    Upon information and belief, one or more of such lenders have also placed the Defendants in default of their debt obligations.

89.    Upon information and belief, 1st Source Bank has accelerated and demanded immediate payment in full of the debt obligations owed to it by the Defendants.

90.    Upon information and belief, 1st Source Bank has begun pursuing its rights and remedies as a secured creditor and has sent letters notifying the Defendants' lessees to begin making their lease payments directly to 1st Source Bank.

91.    Upon information and belief, the Defendants will be unable to continue to operate their businesses in the ordinary course without the availability of financing from the Defendants' existing lenders; especially if there is a disruption in cash flow from their lessees.

92.    Furthermore, the Defendants have told KeyBank that they intend to continue their past practice of depositing all lessee payments into a single deposit account, thereby commingling the collateral proceeds of the various lenders, and paying from such commingled funds whichever lender they so choose or using the funds for other purposes.

93.    For these reasons, the Defendants cannot, and have refused to, protect and preserve the value of KeyBank's collateral.  As a result, absent the immediate appointment of a receiver, the value of KeyBank's collateral is at serious risk of diminution.

15

## COUNT I
**(Breach of Contract)**

94.     KeyBank realleges and incorporates herein by reference the allegations set forth above as if stated fully herein.

95.     Pursuant to Section 7(l)(ii) of the Loan Agreement, and the Commitment Letter incorporated into the Lease Line of Credit Agreement, the Defendants were required to maintain a "Debt Service Coverage Ratio" as of the last day of each fiscal year of not less than 1.10 to 1.00.

96.     According to the Defendants' financial records, the Defendants maintained a "Debt Service Coverage Ratio" as of December 31, 2016 of 0.71 to 1.00.

97.     Pursuant to Section 7(l)(iii) of the Loan Agreement, and the Commitment Letter incorporated into the Lease Line of Credit Agreement, the Defendants were required to maintain a "Debt to Tangible Capital Funds Ratio" as of the last day of each fiscal quarter of not less than 6.00 to 1.00.

98.     According to the Defendants' financial records, the Defendants maintained a "Debt to Tangible Capital Funds Ratio" as of December 31, 2016 of 6.16:1.00 and as of March 31, 2017 of 6.50:1.00.

99.     Eighteen leased vehicles subject to Lease Notes were sold, substantially damaged, destroyed, lost, transferred, or otherwise disposed of by the lessee without the repayment in full of the loans secured by such leased vehicles evidenced by such Lease Notes.

100.    The Defendants materially mispresented financial information in the June and September A/R Reports delivered to KeyBank in connection with the Loan Documents by showing certain lessees as being current on all lease payments to the Defendants when such

16

lessees were actually delinquent in certain lease payments to the Defendants.

101.    Moreover, the Defendants failed to make the regularly scheduled principal and/or interest payments due under the Lease Line of Credit on December 31, 2018 and January 31, 2018.

102.    By reason of such financial covenant defaults, the failure to repay the eighteen Lease Notes in full when due, the material misrepresentations of financial information, and the payment defaults under the Lease Line of Credit, events of default have occurred and are continuing under Section 10(a), (b), (c), (d), and (e) of the Lease Line of Credit Agreement, Section 8(iii), (iv), and (v) of the Loan Agreement, and the "False Statements" and the "Other Defaults" Sections of the Term Note.

103.    Pursuant to the Additional Notice Letter, dated February 6, 2018, all of the outstanding obligations under the Lease Line of Credit, the Floorplan Line of Credit, the Term Loan, and otherwise under the Loan Documents are due and owing and have not been paid.

104.    As a result of these breaches of the Lease Line Documents and the Floorplan Documents, KeyBank is entitled to judgment against the Defendants in the amount of $10,598,061.85, together with interest, other charges, and attorneys' fees and costs incurred in connection with the enforcement of KeyBank's rights and remedies under the Lease Line Documents and the Floorplan Documents.

105.    As a result of these breaches of the Term Loan Documents, KeyBank is entitled to judgment against Fleetway in the amount of $108,315.29, together with interest, other charges, and attorneys' fees and costs incurred in connection with the enforcement of KeyBank's rights and remedies under the Term Loan Documents.

## COUNT II
### (Fraud)

106.    KeyBank realleges and incorporates herein by reference the allegations set forth above as if stated fully herein.

107.    The Defendants materially mispresented financial information in the June and September A/R Reports delivered to KeyBank by showing certain lessees as being current on all lease payments to the Defendants when such lessees were actually delinquent in certain lease payments to the Defendants.

108.    Such false representations were material to KeyBank's discretionary decision to make over 150 extensions of credit to the Defendants under the Lease Line of Credit from July 2017 through November 2017.

109.    KeyBank justifiably relied on such false representations when it made such extensions of credit.

110.    As a result of KeyBank's reasonable reliance on these false representations, KeyBank has suffered compensable damages.

111.    Furthermore, the fraudulent conduct of the owners, directors, officers, and managers of the Defendants which attempted to conceal their own mismanagement of the Defendants, and their outright refusal to protect and preserve the value of KeyBank's collateral by ceasing to commingle the proceeds thereof with other funds and using such proceeds to pay other creditors, justifies the immediate appointment of a receiver for the Defendants' properties and assets.

## PRAYER FOR RELIEF

**WHEREFORE,** KeyBank respectfully requests that this Court:

A.      Grant relief in favor of KeyBank against the Defendants based upon the claims set forth above;

B.      Grant judgment in favor of KeyBank against the Defendants in the amount of $10,598,061.85, plus interest, other charges, and attorneys' fees and costs incurred in connection with the enforcement of KeyBank's rights and remedies under the Lease Line Documents and the Floorplan Documents;

C.      Grant judgment in favor of KeyBank against Fleetway in the amount of $108,315.29, plus interest, other charges, and attorneys' fees and costs incurred in connection with the enforcement of KeyBank's rights and remedies under the Term Loan Documents;

D.      Grant the immediate appointment of a receiver for the Defendants' properties and assets with such powers and duties as this Court shall determine pursuant to separate motion;

E.      Grant KeyBank such other and further monetary and equitable relief as is necessary under the circumstances; and

F.      Grant all other relief that this Court deems just and proper.

Dated: February 14, 2018

Andrew J. Soven
Brian M. Schenker
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103
(215) 851-8100

asoven@reedsmith.com
bschenker@reedsmith.com
*Attorneys for Plaintiff*
*KeyBank National Association*

## **VERIFICATION**

I, Scott C. Young, Senior Credit Risk Officer, KeyBank National Association, make this verification of behalf of KeyBank National Association.  I verify that the facts contained in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.  I understand that the statements herein are made subject to the penalties relating to unsworn falsification to authorities.


Dated: February _12_, 2018

_____
Scott C. Young, Senior Credit Risk Officer